# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PINKTOE TARANTULA LIMITED, *et al.*,[1] | Case No. 18-10344 (KJC) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING CERTAIN SEVERANCE PAYMENTS TO EMPLOYEES

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), by this motion (the "**Motion**") and pursuant to sections 105, 363, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seek the entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "**Proposed Order**") authorizing, but not directing, the Debtors to make certain Severance Payments (defined below) to its employees in an aggregate amount not to exceed $78,000, which would be allowed as administrative priority expenses and paid as they come due. In support of this Motion, the Debtors respectfully state as follows:

### Status of the Case

1.  On February 17, 2018 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Pinktoe Tarantula Limited (8609), Desert Blonde Tarantula Limited (7124), and Red Rump Tarantula Limited (0288).

ATL 22630823v3

2. The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in these Chapter 11 Cases.

## Jurisdiction, Venue, and Statutory Predicates

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested herein are sections 105(a), 363, and 503 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004(h).

## Background

6. The Debtors own and operate four retail stores in New York, California, and Nevada, primarily selling Charlotte Olympia brand luxury shoes and accessories.[2] The Debtors occupy the stores under leases with various landlords. The Debtors are headquartered in New York City and have 21 full and part-time employees.

7. The Debtors have filed these chapter 11 cases to effectuate an orderly liquidation of their assets.

8. A detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of the Chapter 11 Cases, is more fully set forth in the *Declaration of William Kaye in Support of the Debtors' Chapter 11 Petitions and Requests*

---

[2] Debtor Red Rump Limited previously owned and operated a store in Florida, which closed prior to the Petition Date.

*for First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

9. As of the Petition Date, the Debtors employ approximately 21 full and part-time employees (collectively, the "**Employees**"). Debtor Pinktoe Tarantula Limited currently employs 16 Employees at its (i) Las Vegas, Nevada, (ii) South Coast, California, and (iii) New York, New York stores. Debtor Desert Blonde Tarantula Limited employs approximately 6 Employees at its Los Angeles, California store.[3] Debtor Red Rump Tarantula Limited currently has no employees. The Debtors' workforce is not unionized. The Debtors do not use any independent contractors in their stores on a regular basis.

## Relief Requested

10. By this Motion, pursuant to Bankruptcy Code sections 105(a), 363, and 503, the Debtors request entry of the Proposed Order authorizing the Debtors to make certain Severance Payments to non-insider employees in an amount up to $78,000.00 in the aggregate (the "**Severance Payments**"), which would be allowed as administrative priority claims. The Severance Payments would be structured and conditioned as follows:

   a. Upon termination, each of two senior managers would be entitled to a payment up to three months' salary;

   b. Upon termination, two store managers will receive a payment up to two months' salary;

   c. Upon termination, all other Employees would be entitled to a payment up to three weeks' salary;

   d. In order to qualify to receive the Severance Payments, an Employee must (i) remain employed with the Debtors and continue working until the Debtors terminate the employment, and (ii) execute a release agreement substantially in the form of the agreement attached hereto as **Exhibit B** (the "**Release Agreement**").

---

[3] One employee is currently on long-term sick leave.

11. In an exercise of their reasonable business judgment, the Debtors have determined that providing the Severance Payments is necessary to encourage the Employees to remain employed with the Debtors as needed and to enable the Debtors to execute their plan of liquidation and wind-down. The Debtors are concerned that the announcement of this bankruptcy case, and particularly the Debtors' plans to commence store closures and liquidate assets, may cause many of the Employees to leave the Debtors' employ before the Debtors are able to execute their plans.

12. Providing the Severance Payments will generate quantifiable benefits to the Debtors' estates. First, the payments will encourage Employees to maintain their loyalty to the Debtors through the store closure, liquidation, and wind-down process. Second, the releases to be executed by terminated employees will mitigate litigation risk—and, importantly, the costs attendant thereto—based on claims arising out of potential employment-based causes of action that otherwise could result from the layoffs, regardless of merit.

13. Accordingly, and for all of the reasons set forth herein, the Debtors submit that making the Severance Payments is a sound exercise of their reasonable business judgment and should be approved and granted administrative priority treatment.

**Basis for Relief Requested**

14. The Debtors submit that ample justification exists to authorize them to make the Severance Payments on a post-petition basis pursuant to applicable law.

**A. The Court Should Approve the Severance Payments.**

15. Bankruptcy Code Section 363(b)(1) provides that a debtor-in-possession may "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Such use of estate property outside the ordinary

course of business should be authorized when justified by a "sound business purpose." *See, e.g., In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (adopting the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same). Thus, courts should approve transactions supported by the sound business judgment of a debtor's management. *See, e.g., In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

16. Where valid business justifications exist, there is a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation omitted). Furthermore, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted). Instead, objections to such decisions will only be entertained when they allege "bad faith, self-interest, or gross negligence." *See Integrated Res.*, 147 B.R. at 656.

17. The Debtors' determination to make the Severance Payments reflects a reasonable exercise of their business judgment. After careful consideration, the Debtors determined that these payments are necessary to enable the Debtors to execute their plan of wind-down and liquidation and to maximize the value of their estates, while minimizing the risk of employment-related litigation, which would result to costs the estates, regardless of the merit of such claims.

5

The proposed payments will not exceed $78,000.00 and, as such, are relatively small when viewed against the loss of value that would be caused by early employee departures and potential employment-related litigation costs.

18. Additionally, the Debtors believe that the scope of the Severance Payments is fair and reasonable and is the most cost-effective manner in which to express appreciation for employee service and loyalty, protect against attrition of employees, and preserve employee morale. Making the Severance Payments will help the Debtors retain the knowledge, experience, and loyalty of their current critical employees, who are crucial to the Debtors' ability to implement their wind-down and liquidation plans.

### B. The Severance Payments Are Entitled to Administrative Priority.

19. Section 503(b)(1)(A)(i) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate including . . . wages, salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A)(i). Severance payments are entitled to administrative priority under Bankruptcy Code section 507(a)(2) to the extent that they are made on account of post-petition services. *In re Powermate Holding Corp.*, 394 B.R. 765, 775-76 (Bankr. D. Del. 2008) (*citing In re Roth Am., Inc.*, 975 F.2d 949, 957 (3d Cir. 1992)).

20. The Severance Payments fall within the ambit of section 503(b)(1)(A) because they payments are conditioned on the Employees performing post-petition services and providing additional consideration in the form of releases, which will have the effect of preserving the Debtors' estates.

21. Notably, the Severance Payments are not based on length of employment or any pre-petition services, but are instead based solely on the Employees' post-petition conduct.

Separately, the Debtors have filed a motion for approval of payment of certain pre-petition salaries, commissions, and bonuses, which payments are not the subject of this Motion.[4] The Employees will not earn the Severance Payments, nor will such payments vest, until such time as (i) the Debtors unilaterally terminate each such Employee's employment, and (ii) each such Employee executes a copy of the Release Agreement.

22. The Third Circuit Court of Appeals has recognized that payments such as the Severance Payments are entitled to administrative priority: "Traditionally, pay at termination in lieu of notice is allowed administrative expense priority because the payments are made in consideration of quick departure from employment after the petition date—consideration given after the petition." *In re Hechinger Inv. Co. of Delaware*, 298 F.3d 219, 227 (3d Cir. 2002). Accordingly, administrative priority treatment is appropriate.

23. Similarly, approval of the Severance Payments as administrative priority expenses is appropriate under Bankruptcy Code section 503(c), which applies to certain transactions in the severance context. Section 503(c) consists of three subsections: (1) a general prohibition against retention plans for insiders; (2) limitations on severance payments for insiders; and (3) standards governing other transfers to certain employees, among others, that are outside of the ordinary course of business. *See* 11 U.S.C. § 503(c). The Debtors submit that the first two subsections of section 503(c) are inapplicable, as the Employees proposed to receive the Severance Payments are not insiders within the meaning of Bankruptcy Code section 101(31).[5]

---

[4] *See* Motion of the Debtors for Entry of an Order (A) Authorizing Debtors to Pay (I) All Prepetition Employee Obligations, and (II) Prepetition Withholding Obligations, and (B) Directing Banks to Honor Related Transfers.

[5] In addition, even if the Court were to determine that certain Employees are insiders, section 503(c)(2) would still not apply because (a) the payments are part of a program that is generally applicable to all full-time employees, and (b) the amount of the payments to any given employee are not more than ten times the amount of the mean severance pay to be given to non-management employees. *See* 11 U.S.C. § 503(c)(2).

24. Under section 503(c)(3), the relevant inquiry is whether the proposed plan is "justified by the facts and circumstances" of the case. 11 U.S.C. § 503(c)(3). Courts have generally used a form of the "business judgment" standard for approving transactions under Bankruptcy Code section 363(b) to determine whether the section 503(c)(3) "facts and circumstances" standard has been satisfied. *See, e.g., In re Nobex Corp.*, No. 05-20050 (Bankr. D. Del. Jan. 12, 2006) (noting that the section 503(c)(3) standard is "nothing more than a reiteration of the standard under 363 . . . the business judgment of the debtor").

25. Here, as set forth at length above, the Debtors' determination to make the Severance Payments is a valid exercise of their reasonable business judgment and is justified by the facts and circumstances of this case. Accordingly, the relief sought herein is consistent with Bankruptcy Code section 503(c)(3).

### C. The Court Should Authorize the Debtors to Make the Severance Payments as they Come Due.

26. The Debtors must pay all administrative expense priority claims in full to confirm a plan of reorganization in these chapter 11 cases. *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to priority). Although Bankruptcy Code section 503(b) does not specify a time for payment of administrative claims, bankruptcy courts have the discretion to allow for distributions to administrative claimants before confirmation. *See In re Glob. Home Prods., LLC*, Case No. 06-10340, at 7 (Bankr. D. Del. Dec. 21, 2006) (recognizing that the Court has discretion to determine timing for payment of administrative expense claims). Indeed, nothing in the Bankruptcy Code prohibits the Debtors from paying such claims, or this Court from exercising its discretion to authorize the payment of such claims, before confirmation of a chapter 11 plan. *See* 11 U.S.C. § 105(a) (providing that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy

ATL 22630823v3

Code). The Debtors submit that the Court should exercise its equitable powers here, if necessary, for all of the reasons set forth in this Motion.

27. Importantly, payment of claims arising under Bankruptcy Code section 503(b)(1)(A) before the confirmation of a chapter 11 plan affects the timing, but not the amount, of such payment. As noted above, the post-petition Severance Payments constitute administrative claims, and, as a result, the Debtors respectfully submit that they should have the authority to pay such claims as they arise during the pendency of the chapter 11 cases.

**Bankruptcy Rule 6003 Is Satisfied and Request for Waiver of Stay**

28. The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

29. Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001 . . . .

Fed. R. Bankr. P. 6003.

30. The Third Circuit Court of Appeals has interpreted the "immediate and irreparable harm" language in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual

9

and imminent, not speculative or unsubstantiated. *See, e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

31. The Debtors further seek a waiver of any stay of the effectiveness of an order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the relief requested herein is essential to prevent immediate and irreparable damage to the Debtors' operations, going concern value and their efforts to pursue a resolution to these Chapter 11 Cases.

32. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

## Consent to Jurisdiction

33. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice[6]

34. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) creditors holding the twenty largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (c) those parties requesting notice pursuant to Bankruptcy

---

[6] Capitalized terms used in the Notice section but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

10

ATL 22630823v3

Rule 2002; (d) the Office of the United States Attorney for the District of Delaware; (e) the Office of the Secretary of State of the State of Delaware; (f) the Internal Revenue Service; ad (g) the Securities and Exchange Commission.  As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion in accordance with the Local Rules.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

35. No prior request for the relief sought in this Motion has been made to this or any other court.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and such other and further relief as is just and proper.

| | |
|---|---|
| Dated: February 21, 2018 | GREENBERG TRAURIG, LLP<br>*/s/ Dennis A. Meloro*<br>Dennis A. Meloro (DE Bar No. 4435)<br>1007 North Orange Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 661-7000<br>Facsimile   (302) 661-7360<br>Email:  melorod@gtlaw.com<br><br>-and-<br><br>John D. Elrod  (*pro hac vice pending*)<br>Benjamin R. Keck (*pro hac vice pending*)<br>3333 Piedmont Road, NE, Suite 2500<br>Atlanta, Georgia 30305<br>Telephone:  (678) 553-2259<br>Facsimile:   (678) 553-2269<br>Email:  elrodj@gtlaw.com<br>            keckb@gtlaw.com<br><br>*Proposed Counsel for the Debtors and Debtors-in-Possession* |