# Exhibit A

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PINKTOE TARANTULA LIMITED, *et al.*,[1] | Case No. 18-10344 (KJC) |
| Debtors. | (Joint Administration Requested) |
| | **Ref. Docket No.** _____ |

## ORDER AUTHORIZING THE DEBTORS TO MAKE CERTAIN SEVERANCE PAYMENTS

Upon the motion (the "**Motion**")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), for entry of this Order, pursuant to Bankruptcy Code sections 105(a), 363, and 503 authorizing the Debtors to make certain Severance Payments, all as more fully described in the Motion; and upon the *Declaration of William Kaye in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**"); and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Pinktoe Tarantula Limited (8609), Desert Blonde Tarantula Limited (7124), and Red Rump Tarantula Limited (0288).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is GRANTED to the extent provided herein.

2.  The Severance Payments, as set forth in the Motion, are hereby approved.

3.  The claims upon which the Severance Payments are based shall be treated as administrative priority claims pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2).

4.  Debtors are hereby authorized, but not directed, in a reasonable exercise of their business judgment, to make the Severance Payments as such payments come due.

5.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim against the Debtors, or the assumption or adoption of any contract or agreement under Bankruptcy Code section 365.

6.  The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the motion.

7.  The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: February __, 2018

_____
HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Form of Release Agreement**



[EMPLOYEE'S NAME]
[ADDRESS]
USA

[DATE] 2018

Dear [EMPLOYEE'S NAME],

Further to your meeting on 19 February 2018 with your manager, we regretfully confirm that the decision has been made to terminate your employment with [Pinktoe / Desert Blonde] Tarantula Limited (hereafter "**Charlotte Olympia**") due to closing of [LOCATION OF THE STORE] store and as a result of this, your position has been eliminated. This letter is formal notice of termination of your employment. However, should this same position become available within the next 12 months, you will, at first instance, be offered such role. We would like to reassure you that this no way reflects your performance. It is a matter of regret to us that this situation has occurred.

Although your employment is at will, in light of the foregoing, we would terminate your employment on a 10-day notice period, with notice being served to you on 19 February 2018, where your final day of employment shall be 28 February 2018 ("**Last Day**"). We, however, note that your employment is at will and you maintain the right to terminate your employment with us immediately during such notice period, should you wish to do so.

Further, we are seeking to offer you a severance pay of your base rate salary, less lawful deductions, which remains subject to court approval the details of which are set out in in the body of the following document. Such severance pay shall be subject to (i) your remaining employed until your Last Day; (ii) carrying out such duties as will be expected of you and as Charlotte Olympia may direct, including (but not limited to) the list set out below; (iii) the execution of the Agreement and General Release, and (iv) court approval.

The duties which you will be expected to carry out, to the best of your ability as soon as possible but not later than the business day prior to your Last Day, amongst others shall be further detailed to you by your manager, but shall include and not be limited to:

- liaising with London head office and couriers to arrange for the collection of stock and assets back to the New Jersey warehouse;
- undertaking a stock take;
- providing an inventory list and a fixed asset list;
- when packing, ensuring that the disposable assets vs fixed assets (which are to be kept) are split out;
- [all [LOCATION OF STORE] staff documentation is complete prior to the Last Day;
- all [LOCATION OF STORE] staff uniform, black books and confidential documentation is returned to the London head office prior to end of the Last Day;] and
- providing, briefing, informing or otherwise communicating any additional lists, outstanding matters or any other relevant matters to the relevant Charlotte Olympia point of contact, as would be ordinarily deemed necessary for a fulsome close to have been carried out.

Further, this letter confirms that today your manager personally delivered to you by hand and followed up by email, the enclosed Agreement and General Release. In consideration for signing and adhering to the Agreement and General Release, Charlotte Olympia shall also pay you severance pay, less any lawful deductions subject to court approval. You have up to 21 days after receipt of this Agreement and General Release to consider whether to sign and date this Agreement and General Release, in which you waive important rights, including those under the Age Discrimination in Employment Act of 1967. We advise you to consult with an attorney of your choosing prior to signing this Agreement



and General Release concerning the rights you are waiving as well as all other terms of this Agreement and General Release.

The balance of any outstanding advance granted to you by Charlotte Olympia (for expenses) less any such expenses submitted for approval, will be owed by you to Charlotte Olympia and any outstanding amount owed shall be deducted from any final amounts owed to you.

Please leave your company-issued laptop and mobile phone, as well as return all documents, information and other properties of Charlotte Olympia, including Charlotte Olympia contacts, any corporate or financial documents of Charlotte Olympia and all other documents, information or properties of Charlotte Olympia to Charlotte Olympia by 5.00pm of your Last Day, 28 February 2018. Notice is hereby given that you must also turn over all documents and information in your possession concerning Charlotte Olympia, including, but not limited to, its investors, officers and business interests. We strongly caution against you destroying or altering any documents or information in your possession.

We remain available for a further discussion if you wish for a further consultation or have any questions. We thank you for your valuable contribution during your employment with us.

Sincerely,

p.p. Bill Kaye


Bill Kaye
Chief Restructuring Officer

**AGREEMENT AND GENERAL RELEASE**

[Pinktoe / Desert Blonde] **Tarantula Limited** (trading as and hereafter "**Charlotte Olympia**") and **[NAME OF EMPLOYEE],** their heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "**Employee**"), agree that:

1. **Last Day of Employment.** Employee's last day of employment with Charlotte Olympia is 28 February 2018.

2. **Consideration.** In consideration for signing this Agreement and General Release, and complying with its terms, Charlotte Olympia agrees, subject to court approval to pay Employee a salary at Employee's base rate of pay, from 16 February 2018 to 28 February 2018 and a further payment, the total of which amounts to [.] less lawful deductions, which may be paid in separate and multiple payments the last payment of which shall be paid the later of, (i) within 15 business days after Charlotte Olympia receives a signed original of this Agreement and General Release or (ii) Charlotte Olympia's receipt of the letter from Employee in the form attached hereto as Exhibit A or, (iii) the court has approved such payment, and provided that the Employee has not submitted notice to terminate their employment prior to the Last Day of Employment as set out in paragraph "1" and the Employee carries out all duties expected of their as an Employee or as may be directed by Charlotte Olympia.

The Employee agrees that they will be exclusively responsible for the payment of any taxes owed on any amounts paid to Charlotte Olympia or their attorneys under the terms of this Agreement, except for any taxes on wages subject to an IRS Form W-2 for which Charlotte Olympia is responsible. Charlotte Olympia makes no representation as to the taxability of the amount paid to the Employee. The Employee agrees to pay their portion of any additional federal, state, or local taxes, if any, which are required to be paid with respect to this settlement. Moreover, the Employee agrees to indemnify Charlotte Olympia and hold Charlotte Olympia harmless from any interest, taxes or penalties assessed against it by any governmental agency as a result of the non-payment of taxes on any amounts paid to the Employee or their attorneys under the terms of this Agreement.

3. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and General Release and the fulfillment of the promises contained herein. If the Employee terminates their employment prior to their Last Day of Employment as set out in paragraph "1", the Employee shall be paid such base salary of pay, less lawful deductions, as up to such Last Day of Employment.

4. **General Release of All Claims**. Employee knowingly and voluntarily releases and forever discharges Charlotte Olympia, its parent corporation, affiliates, subsidiaries, divisions, predecessors, co-employers, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

- The Immigration Reform and Control Act;

- The Americans with Disabilities Act of 1990;

- The Age Discrimination in Employment Act of 1967 ("ADEA");

- The Workers Adjustment and Retraining Notification Act;

- The Fair Credit Reporting Act;

- any other federal, state or local law, rule, regulation, or ordinance;

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

By signing this Agreement and General Release, the Employee hereby authorizes Charlotte Olympia or an agent acting on Charlotte Olympia's behalf, whether ADP Totalsource or otherwise, to make any deduction(s) from the Employee's wages for such amounts owing to Charlotte Olympia, whether personal order, return of uniform or otherwise. The Employee agree that by signing this Agreement and General Release, that this withholding should begin immediately upon any such amounts being owed and continue until the obligation is paid in full. Further, by signing this Agreement and General Release, the Employee agrees that upon termination of employment for any reason, the entire amount due and owing becomes immediately due and payable and will be deducted from the Employee's final paycheck(s). The Employee understand that to revoke this authorization, the Employee must submit the revocation in writing to the Employee's immediate supervisor and that it will become effective after receipt and processing by ADP TotalSource or any other entity acting on Charlotte Olympia's behalf. Nothing in this clause shall be construed to limit the at-will employment relationship between the Employee or Charlotte Olympia.

5. **Acknowledgments and Affirmations.** Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Charlotte Olympia.

Employee also affirms that Employee has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits to which Employee may be entitled. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of Charlotte Olympia, including in respect of any subsidiary or affiliate of [Pinktoe / Desert Blonde] Tarantula Limited, and will continue to maintain the confidentiality of such information consistent with Charlotte Olympia's policies and Employee's agreement(s) with Charlotte Olympia and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by Charlotte Olympia or its officers, including any allegations of corporate fraud.

Both parties acknowledge that this Agreement does not limit either party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental

agency. To the extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recovery of individual monetary relief or other individual remedies.

6. **Confidentiality and Return of Property.** Employee agrees not to disclose any information regarding the terms or the existence or substance of this Agreement and General Release, except to Employee's spouse, tax advisor, and/or an attorney with whom Employee chooses to consult regarding Employee's consideration of this Agreement and General Release.

In the event Employee or Employee's counsel believe either is compelled to provide or disclose information described in this paragraph, they will provide written notice of such belief, via mail and email, to Bill Kaye, c/o John Elrod, Greenberg Traurig, LLP, Terminus 200, 3333 Piedmont Road NE, Suite 2500, Atlanta, GA 30305, email: billkaye@jllconsultants.com, no later than seven (7) business days prior to said production or disclosure. This Agreement shall not be filed with any court and shall remain forever confidential except in an action to enforce or for breach of this Agreement. If Employee asserts an action to enforce this Agreement or for breach of this Agreement, Employee shall maintain such confidentiality by whatever means necessary, including, but not limited to, submitting the Agreement to a court under confidential seal.

Employee affirms that Employee has returned all of Charlotte Olympia's property, documents, and/or any confidential information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at Charlotte Olympia's premises and that Charlotte Olympia is not in possession of any of Employee's property.

7. **Cooperation.** Subject to Employee's other personal and professional obligations and on reasonable notice and at reasonable times, Employee will cooperate with Employer and its counsel in connection with any investigation, administrative or regulatory proceeding or litigation relating to any matter in which Employee was involved or of which Employee has knowledge as a result of Employee's employment with Employer and/or any Released Party or Released Parties.

8. **Governing Law and Interpretation.** This Agreement and General Release shall be governed and conformed in accordance with the laws of the state in which Employee worked at the time of Employee's last day of employment without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

9. **Non-admission of Wrongdoing.** The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

10. **Amendment**. This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

11. **Entire Agreement.** This Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except the confidentiality agreement entered into by the Employee and Charlotte Olympia at the start of Employee's employment, which is incorporated herein by reference. Employee

acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

**THE EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE. THE EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO THE EMPLOYEE'S SIGNING OF THIS AGREEMENT AND GENERAL RELEASE.**

**THE EMPLOYEE MAY REVOKE THIS AGREEMENT AND GENERAL RELEASE FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY EMPLOYEE SIGNS THIS AGREEMENT AND GENERAL RELEASE. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO BILL KAYE BY EMAIL AT [BILLKAYE@JLLCONSULTANTS.COM](mailto:BILLKAYE@JLLCONSULTANTS.COM) AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE." THE REVOCATION MUST BE MAILED TO BILL KAYE, C/O JOHN ELROD, GREENBERG TRAURIG, LLP, TERMINUS 200, 3333 PIEDMONT ROAD NE, SUITE 2500, ATLANTA, GA 30305AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT AND GENERAL RELEASE OR EMAILED TO CHRISTINA NGAN AT BILLKAYE@JLLCONSULTANTS.COM.**

**THE EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT AND GENERAL RELEASE, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

[Pinktoe / Desert Blonde] Tarantula Limited

By: _____   By: _____
   Name: _____      …………………………..
                                                       …………………………..

Date: _____   Date: _____

EXHIBIT A

                                                                       _____ 2018

Mr. Bill Kaye
[Pinktoe / Desert Blonde] Tarantula Limited
REGISTERED OFFICE: UNITED CORPORATE SERVICES, INC.
874 WALKER ROAD, SUITE C
DOVER, DE 19904
USA

C/O
John D. Elrod
Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road NE
Suite 2500
Atlanta
GA 30305


Re:     Agreement and General Release

Dear Bill,

On _____, I signed an Agreement and General Release between [Pinktoe / Desert Blonde] Tarantula Limited ("Charlotte Olympia") and me.  I was advised in writing by Charlotte Olympia to consult with an attorney of my choosing, prior to executing this Agreement and General Release.

More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release.  I have not revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release up through the date of this letter.

Very truly yours,



**Name: _____**